# NO. 12-16-00031-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS,* *APPELLANT* | § | *APPEAL FROM THE 2ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *DAVID PAUL STAFFORD,* *APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

The State appeals from the granting of a motion to suppress filed by David Paul Stafford. In one issue, the State contends that the trial court erred by finding a lack of reasonable suspicion to support a traffic stop. We affirm.

### BACKGROUND

The State charged Appellee with driving while intoxicated, third or more. Appellee filed a motion to suppress any evidence obtained as the result of a traffic stop, which he contended was not supported by a lawful warrant, probable cause, reasonable suspicion, or other lawful authority. At the suppression hearing, Texas State Trooper Cody Shepard testified that, on June 8, 2013, he stopped Appellee's vehicle to investigate a possible window tint violation. The record indicates that Shepard followed Appellee for approximately four miles before making the stop. He could not recall if he ever passed Appellee's truck. He was specifically concerned by Appellee's front driver side window. He testified that he based his suspicions on the other vehicles on the road, along with his training and experience.

The stop occurred at nearly 8:00 p.m., but Shepard testified that it was still light out. He testified to making approximately 250 traffic stops for tint violations, approximately forty percent of which resulted in citations. He testified that Texas requires twenty-five percent light

transmission through a vehicle's driver and passenger side windows. Anything less is illegal. Pursuant to policies of the Texas Department of Public Transportation, he does not issue a citation unless the light transmission is twenty percent or less. He testified that Appellee's window tint appeared to be less than twenty percent light transmission.

Shepard explained that illegally tinted windows differ from normal windows in that the windows appear darker because of the decrease in light transmission. He testified that a person can tell the difference simply by looking at the windows. However, he uses a tint meter to determine if the tint is too dark, and the vehicle must be stationary in order to conduct the test. Although he tested Appellee's tint, he could not recall the score. He did not write Appellee a ticket for the tint because he was arrested for driving while intoxicated.

Appellee testified that Trooper Shepard followed him a "long time" before stopping him and that he stayed behind Appellee's truck the entire time. He testified that Shepard tested his tint, but he could not recall the score. He testified that Shepard did not tell him that the tint was illegal. Appellee explained that his vehicle has been inspected three times and has always passed inspection. Appellee offered photographs of his truck into evidence. He testified that he took the photographs the day before the hearing and that his truck's tint had not been altered since June 8. In a photograph taken from the driver side of the truck, Appellee can be seen standing on the passenger side of the truck. In a photograph taken from the passenger side of the truck, a vehicle and its license plate (although not the license plate number) can be seen on the driver side of the truck. Both Appellee and the other vehicle are visible through the truck's front driver and passenger side windows. The back side windows appear darker than the front, but Trooper Shepard testified that the tint on the back side windows can be darker than twenty-five percent. The record does not indicate that the State offered the video from the stop into evidence.

During the hearing, the trial court expressed concern regarding whether Shepard had ever passed Appellee's truck and saw the front driver side window before making the stop. The trial court repeatedly stated his opinion that Shepard offered a conclusory statement that a tint violation had occurred. The trial court also made the following statements:

> [T]hese cases have elements in them like the officer specifically testified that he had noticed a silver Cadillac with extremely dark tint on the front passenger window, not a conclusionary statement that he believed that there was a tint violation but a specific articulable fact.

2

. . . .

> [I]f there is testimony he saw the window before the stop and he testifies that he thought the window tint was in violation of the statute the motion is denied. If he did not testify that he saw the window before the stop the motion is granted.

After the hearing, the trial court provided the parties with a letter, in which it stated its finding "that there was no testimony as to any 'specific articulable facts' to support the Trooper's opinion that the tint violated the statute and therefore [the court has] no means to assess whether his opinion was objectively reasonable." The trial court cited *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005) to support its conclusion, and granted Appellee's motion to suppress.

## MOTION TO SUPPRESS

In its sole issue, the State challenges the trial court's decision to grant Appellee's motion to suppress. According to the State, Trooper Shepard testified to specific, articulable facts in satisfaction of the reasonable suspicion standard. The State argues that the trial court's decision to the contrary is not based on an evaluation of the credibility or demeanor of the witnesses, but rather on an application of law to the facts.

### Standard of Review and Applicable Law

We review a trial court's suppression ruling under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to a trial court's determination of historical facts. *Id*. The trial court is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *Id*. The trial court may believe or disbelieve all or part of a witness's testimony. *Id*. Second, we apply a de novo review to the trial court's application of law to the facts. *Id*. We will sustain the trial court's ruling if it is reasonably supported by the record and correct on any legal theory. *Id*. at 447-48.

An officer must have "reasonable suspicion" to lawfully conduct a traffic stop. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). Reasonable suspicion exists when the officer is aware of specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a person has engaged or is engaging in criminal activity. *Id*. Because this standard is wholly objective, the officer's subjective intent is irrelevant. *Id*. All the standard requires is "'some minimal level of objective justification'" for

3

the stop. *Id*. (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)). "Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review." *Id*.

## Analysis

The State cites to *Stevens v. State*, No. 02-08-00389-CR, 2010 WL 1006325 (Tex. App.—Fort Worth Mar. 18, 2010, no pet.) (mem. op., not designated for publication), to support its position that Trooper Shepard's testimony establishes reasonable suspicion. In that case, two officers stopped Stevens for perceived illegal tint. *Stevens*, 2010 WL 1006325, at *1. One officer testified that he believed the tint on Stevens's passenger side window was illegal and the only way to test the tint was to stop the vehicle and use a tint meter. *Id*. He testified that the weather was clear at the time of the stop. *Id*. When asked if he had reasonable suspicion based on his experience and training to stop the vehicle for illegal window tint, he responded, "Yes, ma'am." *Id*. Another officer testified that he was unable to conduct a tint test because Stevens's car window would not roll down. *Id*. at *2. He described the tint as "extremely dark." *Id*. at *5. Both officers testified to giving numerous citations for illegal tint over the years. *Id*. The Second Court of Appeals found that the officers testified to "specific, articulable facts that would lead them to reasonably conclude that Stevens was committing a traffic violation." *Id*.

In *Ford*, on which the trial court relied, Trooper Peavy testified that he saw Ford following another vehicle at a distance that he believed to be insufficient and in violation of traffic laws. *Ford*, 158 S.W.3d at 493. The Texas Court of Criminal Appeals held that this testimony presented the trial court with nothing more than a conclusory statement that Ford was, had been, or would have been engaged in criminal activity. *Id*. The court stated as follows:

> We do not quarrel with the notion that Peavy may have in fact believed that Ford was following another car too closely. Nor do we dispute that the trial judge is free to believe or disbelieve Peavy's testimony. But without specific, articulable facts, a court has no means in assessing whether this opinion was objectively reasonable.

*Id*. According to the court, "[m]ere opinions are ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis." *Id*. Reliance on an officer's special training is also insufficient to establish reasonable suspicion without objective factual support. *Id*. at 494. The Court held that the "State failed to elicit any testimony pertinent to what facts would allow Peavy to objectively determine Ford was violating a traffic law in support of his judgment." *Id*.

4

The State contends that *Stevens*, not *Ford*, is analogous to the present case. However, the court of criminal appeals is the final authority on issues of criminal law, and the trial court could not ignore binding precedent from a superior court. *See State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994); *see also* TEX. CONST. art. V, § 5(a). Accordingly, based on *Ford*, the trial court could reasonably conclude that the State failed to elicit testimony pertinent to which facts would allow Trooper Shepard to objectively determine that Appellee was violating a traffic law. *See Ford*, 158 S.W.3d at 494. Without specific, articulable facts, the trial court had no means of assessing whether Shepard's opinion was objectively reasonable. *See id*. at 493-94. Because a viable legal theory supports the trial court's judgment, we are not permitted to adopt a theory that results in reversal. *See Ross v. State*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Under the circumstances of this case, we conclude that the trial court did not err by granting Appellee's motion to suppress. *See Hamal*, 390 S.W.3d at 306; *see also Ross*, 32 S.W.3d at 858. We overrule the State's sole issue.

## DISPOSITION

Having overruled the State's sole issue, we *affirm* the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered August 31, 2016.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 31, 2016**

**NO. 12-16-00031-CR**

**THE STATE OF TEXAS,**
Appellant
V.
**DAVID PAUL STAFFORD,**
Appellee

Appeal from the 2nd District Court

of Cherokee County, Texas (Tr.Ct.No. 19708)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*